# CHARLESTON.

RUBY SUTTON LEMASTERS *v.* BOARD OF EDUCATION OF
GRANT DISTRICT

(No. 5999)

Submitted January 24, 1928.    Decided January 31, 1928.

1.  SCHOOLS AND SCHOOL DISTRICTS—*Tender of, Resignation by Teacher Under Contract to Teach Held Offer to Rescind; Tender of Resignation by Teacher Under Contract to Teach is Not Binding on Either Party Until Accepted by Board Assembled as Such; Tender of Resignation by Teacher Under Contract to Teach May be Withdrawn at Any Time Before Acceptance by Board Assembled as Such (Code, c. 45, § 45).*

    The tender of a so-called "resignation" by a teacher under contract to teach in a district school, being a mere offer to effect a mutual rescission of a contract of employment, is not

binding on either party to the contract until its acceptance by her employer, assembled as a board, and may be withdrawn at any time before such acceptance takes place. (p. 83.)

(Contracts, 13 C. J. § 360; Schools and School Districts, 35 Cyc. p. 1094.)

2.    CONTRACTS—*School Board's Plea That Teacher's Salary Claim Was Compromised as Consideration for Contract Employing Teacher for Following Term Held Invalid; Such Agreement Being Void as Against Public Policy.*

A plea of accord and satisfaction tendered by a board of education in a suit against it by a school teacher, which says that the claim sued on was mutually compromised and settled as a consideration for entering into a contract made by them by which she was employed as a teacher in a public school, should be refused as setting up an agreement void as against public policy. (p. 87.)

(Contracts, 13 C. J. § 366.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Doddridge County.

Action by Ruby Sutton Le Masters against the Board of Education of Grant District. Judgment for defendant, and plaintiff brings error.

*Judgment reversed; verdict set aside; new trial awarded.*

*Homer Strosnider* and *L. W. Chapman,* for defendant in error.

*Paul M. Ireland* and *J. E. Law,* for plaintiff in error.

LIVELY, JUDGE:

Plaintiff in error, Ruby LeMasters, brought an action of assumpsit for breach of contract against defendant Board of Education, in which she sought to recover $805.00 unpaid teacher's salary and $12.50 institute attendance money. Judgment was for defendant. This writ followed.

The issues presented upon the trial, raised by the defendant's pleas of non-assumpsit and accord and satisfaction, were: (1) Did the plaintiff resign her position as teacher; and (2) if she did not resign, was she barred from maintaining this present action by acceptance of a contract to teach during

the next school year, in settlement of any claim against the board? Upon the submission of these issues to the jury, a general verdict for defendant was returned.

We will discuss first the question of the plaintiff's alleged resignation. The evidence discloses that on September 30, 1925, the plaintiff, upon being informed by the president of the board of education that a petition had been filed with him asking for her removal, told the president that she would resign, and that same day she withdrew from the secretary of the board her contract and other papers that had been filed with him. It further appears that on September 30, 1925, the president of the board got in touch with the other two members who informally signified their willingness to accept the plaintiff's resignation, which fact was communicated to her. Two days later, and before the defendant as a board had accepted the plaintiff's tender of an offer to agree to a recission of her contract, she notified the board that she had decided not to resign her position, and offered to file with the defendant's secretary the papers she had withdrawn. However, the defendant took the position that the plaintiff had resigned, and appointed another teacher in her stead. It is clear that under these circumstances there was no resignation by the plaintiff, being an employee and not a public officer, she could not "resign" in the sense that the term is ordinarily used. However, she could offer to agree to a recission of her contract, which offer when duly accepted by the proper authority would bring about a termination of her contract of employment. She, in substance, desired to end the contract by mutual consent. She wanted to be relieved of the obligation by consent of her employer. That is the meaning of the "resignation," so called. In the instant case the plaintiff's offer to "resign" was not accepted by the school board, a corporate body, acting as such, before the withdrawal of her offer. "It is an elementary principle that, when several persons are authorized to perform a public service, or to do an act of a public nature, as an organized body, which requires deliberation, they should be convened in a body, that they may have the counsel and advice of every member, al-

though they are not all of the same opinion as to the matter
in hand. Accordingly, the great weight of authority is to the
effect that, in order for a school board to bind the district in
the employment of teachers [and the same rule would be ap-
plicable to the rescission of such a contract], it is necessary
that the members of the board act as a board, and that to do
so it is imperative that all meet together, or at least be notified
of such meeting, and have an opportunity to meet together, to
consult over the employment of such teachers." Annotated
note to *Ryan* v. *Humphries,* L. R. A. 1915 F, page 1047; *Pa.
L. R. Co.* v. *Board of Education,* 20 W. Va. 360; sec. 45,
chap. 45, Code.

*Curtright* v. *Independent School District, etc.,* 82 N. W.
(Iowa) 444, was a case in some respects similar to the instant
one. There the plaintiff delivered to the president of the
school board a writing in which he stated that, "I hereby
tender my resignation as principal of schools. It has been
made plain to me that the progress of the children is some-
what retarded by my position. To stand in their way would
be an injustice to them. Therefore, in the interests of school
harmony, I tender this, to take effect Friday evening, Decem-
ber 10th. Wishing my successor abundant success, I am the
same F. D. Curtright." The president of the board called a
special meeting December 11th, and after the board had con-
vened but before the tendered resignation had been acted
upon, the plaintiff placed upon the secretary's desk a writing,
withdrawing his offer to resign. The board voted to accept
the resignation, and plaintiff brought an action for breach
of contract, and recovered in the trial court. In discussing
the question of resignation, the Supreme Court of Iowa said:

> Appellant's first contention is that the paper of
> December 8th, 'is in fact and in law a renunciation
> of the contract upon his part, and terminated all
> right of the plaintiff to in any manner enforce
> the contract.' A number of authorities are cited
> to the effect that, having renounced the contract,
> the plaintiff cannot recover for the refusal on the
> part of the defendant to thereafter perform it.
> We do not so construe this writing. It is simply

a tender—an offer—to resign, to terminate the con-
tract, and, until accepted, was not binding upon
either party.  If it had been accepted, both parties
would have consented to the termination of the
contract; but, if not accepted, both would continue
to be bound by it.  Being a mere offer, the plaintiff
had the right to withdraw it at any time before it
was acted upon by the defendant's board, and this
he did; wherefore it was as if no such offer or
tender had been made, and at the same time the
board acted it had no such offer to act upon.  We
do not think that this writing, nor the fact that
the plaintiff drew the balance of pay due to him,
nor that he delivered the key of the school house,
on demand of the board, prior to January 3d,
shows an abandonment of the contract.  He drew
his pay to the end of the year because it was due
him, and delivered up the key because it was
demanded of him.  The fact that the tender of
resignation was handed to the president, and re-
tained by him, did not constitute an acceptance of
it, as was the case of *Gates* v. *Delaware Co.*, 12
Iowa, 405, for the reason that in this case it re-
mained for the board to act upon the offer, while in
that no further action was required.  The prin-
ciples involved in this inquiry are so elementary as
to require no further citations.''

It is further contended by the defendant board, that what-
ever claim the plaintiff may have had against it was com-
promised and settled by the awarding of a contract to teach
for another year in consideration of the plaintiff's withdrawal
of her suit against it.  It is contended by the plaintiff that
she did not enter into any such agreement with the board,
but even if the evidence justified such a finding by the jury,
the plaintiff would not be barred from maintaining the pres-
ent action, because such a compromise would be contrary to
public policy.

Was such a contract void as against public policy?  This
Court said in *Bias* v. *Atkinson*, 64 W. Va. 486, quoting from
9 Cyc. 481, ''It is not easy to give a precise definition of pub-
lic policy.  It is perhaps correct to say that public policy is
that principle of law which holds that no person can lawfully

do that which has a tendency to be injurious to the public or against the public good, which may be designated, as it sometimes has been, the policy of the law or public policy in relation to the administration of the law. Where a contract belongs to this class, it will be declared void; although in the particular instance no injury to the public good may have resulted. In other words, its validity is determined by its general tendency at the time it is made, and if this is opposed to the interests of the public, it will be invalid, even though the intent of the parties was good and no injury to the public would result in the particular case. The test is the evil tendency of the contract and not its actual injury in a particular instance.''

To the district boards of education there is entrusted the control and welfare of the schools of each district. The employment of teachers is one of their most important duties. The interests of the public require that this selection should be unbiased and be based upon the qualifications of the teacher alone, and not upon extrinsic factors such as the settlement of conflicting claims between a teacher and the board. If a teacher is not competent to assume charge of a school, he should not be appointed to the position merely because of business expediency or some equally unsatisfactory reason. The salary paid the teacher for services rendered is the consideration contemplated by law in contracts of this nature. The alleged agreement set up by the defendant board in its special plea of accord and satisfaction was clearly subversive of public interest, and was therefore void as against public policy. In passing, it may be observed that in *Board of Education* v. *Burton,* 30 Ohio Cir. Ct. Repts. 411, ''in a contract between a township board of education and a teacher, under which the latter was to teach an eight-months' term of school at $45.00 per month, was included a stipulation that such teacher would not exact, demand or accept pay for attending the teachers' institute: *Held,* such stipulation is against public policy and void; and in an action for the purpose the teacher can recover the sum fixed by Rev. Stat. 4091 (Lan. 6683) for such attendance.''

It follows that the trial court should have sustained the plaintiff's objection to the filing of the defendant's plea of accord and satisfaction. This conclusion renders unnecessary a consideration of the evidence introduced under this plea and the instructions based thereon, because they have no place in the case. It is contended by counsel for the defendant board that even if its special plea of accord and satisfaction was bad, yet the defense therein set up was one which could have been offered under the general issue, and as the plaintiff failed to object to the introduction of the evidence based on this plea, she cannot be heard to complain. It may be true that the defense of accord and satisfaction could be offered under the plea of general issue but here the defense was presented in the form of a special plea, and the court by its action in overruling the plaintiff's objection to the filing of the same, signified that in his opinion the plea offered a valid defense. It would have been useless to have objected to the introduction of testimony based upon a plea which the court had ruled to be a proper one. Moreover, whatever action may have been taken by the court in ruling upon this plea, which we hold to be bad, the court probably should have on its own motion refused to permit the introduction of evidence relied upon to establish the existence of an accord and satisfaction which was void as against public policy. 3 Williston on Contracts, sec. 1630-A, page 2867.

Plaintiff assigns as error the action of the court in giving the defendant's instruction No. 1. This instruction as contained in the printed record is unintelligible. An examination of it reveals the fact that the complete instruction as read to the jury has probably not been included in this record. For this reason we will be unable to pass upon this assignment of error.

Plaintiff also assigns as error the refusal of the court to give plaintiff's instruction No. 8. This instruction, in substance, told the jury that a resignation of employment is but an offer to terminate by mutual agreement a contractual relation, which offer may be withdrawn at any time before acceptance by the other party; and that unless they believed

from all the evidence in the case that the plaintiff of her own free will offered to terminate her employment as teacher, and that said offer was accepted or agreed to by the board of education acting as such in proper meeting, before its withdrawal by the plaintiff, they should find for the plaintiff upon the resignation issue. This instruction is probably technically defective in some small particulars, such as the inclusion of the word ''office'' therein, but it is substantially correct, being in accord with the rules of law heretofore laid down in this opinion. It was error to refuse to give this instruction.

Plaintiff contends that a judgment of *non obstante veredicto* should have been entered. It may be that such a judgment would be proper in the instant case if there had been a joinder of issue upon a single defective plea presenting no defense to the plaintiff's action, but here there was not only a joinder upon a defective special plea but also a joinder upon a plea of the general issue. Under the common law a judgment *non obstante verdicto* cannot be taken in any case in which the pleadings state a good cause of action and defense and make a material issue of fact for the jury. *Holt* v. *Elevator Co.*, 78 W. Va. 785. And such a judgment must be based upon the merits of the case as disclosed by the pleadings, not in any sense upon the evidence adduced upon a material issue properly joined. *Holt* v. *Elevator Co., supra.* This is not a proper case for the entering of a judgment *non obstante veredicto.*

It is contended by counsel for the defendant Board that the jury would not have been warranted in returning a verdict for the plaintiff because there was a variance between the evidence and the allegations of the plaintiff's declaration. This alleged error was not brought to the attention of the trial court in any way. ''The proper way to take advantage of a variance between allegata and probata is not after verdict, working a surprise and injustice on the opposite party, but to object to the evidence when first offered or by motion to strike out, so that the pleader if he desires, may exercise his rights of timely amendment, given by the statute. And we think that sound and orderly rules of practice require that

such objections and motion to exclude predicated on variance should specifically state the ground and should not be regarded as covered by some general objective or a motion entered to catch the court or the opposite party in reversible error not specifically pointed out on the trial.'' *Long* v. *Pocahontas Consol. Collieries Co.,* 83 W. Va. 380. And a variance between allegata and proof, not called to the attention of the lower court by any means, if not so great as to show distinct causes of action, will be treated by this Court as having been waived. *Bank* v. *Bryan,* 72 W. Va. 29. We do not think it can be said that there is such a variance between plaintiffs' declaration and the evidence offered to support it as to warrant the conclusion that a different cause of action was sought to be established by the evidence. The plaintiff's declaration, while rather inaptly drawn, bases the right of recovery upon the unlawful discharge of the plaintiff from her contract of employment as a teacher at the McMillan school, during the school term of 1925-1926. And plaintiff introduced evidence to support this theory. It appears from the record that the defendant was fully informed of the charge it was called upon to meet. The various contentions of the parties were fully developed upon the trial of the case and we are unable to see that the defendant has been greatly prejudiced by any alleged variance between the allegata and probata.

The judgment of the trial court will be reversed, the verdict set aside and a new trial awarded.

*Judgment reversed; verdict set aside; new trial awarded.*